IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KATHY ELAINE PONS,
     Plaintiff,

vs.                         Case No.: 5:17cv187/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,
     Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 7, 8). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed.

## I.     PROCEDURAL HISTORY

On March 21, 2013, Plaintiff filed an application for DIB, and in the application she alleged disability beginning June 24, 2011 (tr. 23).[1]  Her application was denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ").  A hearing was held on March 24, 2015, and on May 1 2015, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 23–37).  The Appeals Council subsequently denied Plaintiff's request for review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

## II.     FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* tr. 23–37):

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on November 9, 2017 (ECF No. 12).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

Case No.: 5:17cv187/EMT

(1)     Plaintiff last met the insured requirements of the Act on December 31, 2011[2];

(2)     Plaintiff did not engage in substantial gainful activity during the relevant period;

(3)     Through the date last insured, Plaintiff had the following severe impairments: lumbar degenerative disc disease with herniated nucleus pulposus at L5--S1, cervical spondylosis, and fibromyalgia;

(4)     Through the date last insured, Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(5)     Through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she could continuously use her left hand for simple grasping and fine manipulation; frequently use her right hand for simple grasping and fine manipulation; and occasionally use both hands for pushing and pulling arm controls.  She could occasionally use her feet for pushing and pulling leg controls and occasionally stoop, crouch, kneel, crawl, balance, climb ramps and stairs, and reach overhead.  She could not climb ladders, ropes or scaffolds.  She could occasionally work around unprotected heights and moving machinery.  She could tolerate occasional exposure to marked changes in temperature and humidity and occasionally drive automotive equipment.  She experiences a moderate degree of pain, which occasionally interferes with concentration, persistence and pace, but does not require her to abandon her work or work station; this is not a continuous concept but instead occurs intermittently.  She could not perform any computer work on a repetitive basis;

(6)     Plaintiff was unable to perform any past relevant work;

(7)     Plaintiff was born on November 20, 1961, and was 50 years old, which is defined as an individual closely approaching advanced age, on the date last insured;

---

[2] Thus, the time frame relevant to Plaintiff's claim for DIB is only about six months, from June 24, 2011 (date of alleged onset), through December 31, 2011 (date last insured).

(8)     Plaintiff has at least a high school education and is able to communicate in English;

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills;

(10)    Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed;

(11)    Plaintiff therefore was not under a disability, as defined in the Act, at any time from June 24, 2011, the alleged onset date, through December 31, 2011.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd.,

921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the  evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant

is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     PLAINTIFF'S PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY

A.     Medical History

Evidence That Pre-dates the Alleged Disability Onset Date

On March 12, 2009, Hulon E. Crayton, M.D., conducted a musculoskeletal examination of Plaintiff which revealed full range of motion of all joints without synovitis, but a positive "fibromyalgia trigger point exam" (tr. 278).

Follow-up treatment notes from Dr. Crayton are brief and generally state "exam is unchanged" or "no synovitis is noted"; they include fibromyalgia diagnoses; and they reflect prescriptions for (or adjustments to) various medications such as Ultram, Mobic, and Flexeril (*see, e.g.*, tr. 277, 275, 273, and 269 (treatment notes dated April 15, 2009, February 4, 2010, November 9, 2010, and April 20, 2011, respectively)).

Plaintiff returned to Dr. Crayton on May 26, 2011 (tr. 268). She had obtained a cervical MRI earlier that month and was there, in part, to discuss its results. Dr. Crayton explained that the MRI showed moderately severe disc degeneration at C4-5 and C5-6 (tr. 268; *see also* tr. 282). Dr. Crayton assessed severe cervical spondylosis, as well as fibromyalgia (tr. 268). He also referred Plaintiff to a Dr. Hammad for targeted cervical epidural injections (*id.*).

<u>Evidence from the Relevant Period (June 24 to December 31, 2011)</u>

On September 20, 2011, Plaintiff returned to Dr. Crayton after having obtained a lumbar MRI on June 28, 2011 (tr. 267, 281). Dr. Crayton's earlier assessments as to cervical spondylosis and fibromyalgia remained the same, but he added left lateral posterior disc herniation at L5-S1 (tr. 267). He also noted that Plaintiff's physical examination remained unchanged (*id.*).

Plaintiff returned to Dr. Crayton on December 7, 2011 (tr. 266). She reported that her medications were, at best, providing "perhaps 30% worth of [pain] relief," although she acknowledged that she had not obtained the recommended epidural injections with Dr. Hammad (*id.*).

<u>Evidence That Post-dates the Alleged Disability Onset Date</u>

Plaintiff saw Karin Maddox, M.D., in late February 2012, with primary complaints of back pain, which Plaintiff reported had begun approximately twenty

years prior (tr. 261). She also reported joint pain and muscle pain (tr. 260). Plaintiff described her symptoms as "mild"; she stated they were exacerbated by prolonged periods of standing or sitting; and she stated did not experience numbness or weakness in her upper or lower extremities (tr. 261). Plaintiff advised she had not previously tried physical therapy or injections for her back pain (*id.*). A physical examination revealed no decreased range of motion and no joint swelling, as well as full ("5/5") and normal strength in all muscles (tr. 260, 259). Sensation to light touch, pain, and vibration was intact, and gait and reflexes were normal (tr. 259). Dr. Maddox did note tenderness to palpation of the cervical and lumbar spine and multiple trigger points in the cervical and lumbar regions (tr. 258). She assessed myofascial pain, neck pain, and low back pain (*id.*).[3]

Plaintiff resumed treatment with Dr. Crayton in May of 2012 (tr. 286). She reported that her current medication regimen (a combination of Butrans patches, Tramadol, and Cymbalta) were providing "adequate pain relief" with no adverse side effects (*id.*). As before, Dr. Crayton assessed fibromyalgia, severe cervical spondylosis, and left L5-S1 lateral posterior disc herniation (*id.*). Plaintiff returned

---

[3] Although Dr. Maddox did not include fibromyalgia among Plaintiff's assessments (*see* tr. 258), she noted fibromyalgia in another section of her report where she listed Plaintiff's "other problems" and detailed Plaintiff's past medical history, family history, social history, and medication history (*see* tr. 261).

on October 25, 2012, and reported "doing well physically" (tr. 288). Her assessments remained the same (tr. 289). Plaintiff returned in March of 2013 and reported a flare up in her neck pain and stated she was "scare[d]" of obtaining the recommended epidural injections (tr. 293; *see also* tr. 220 (Plaintiff again reporting fear relating to the injections, as well as her belief that there was "a big chance of them not even working or lasting very long")). Otherwise, the treatment record is essentially the same as Dr. Crayton's treatment records from 2012 (*see* tr. 293). Additional records from Dr. Crayton, dated in April, September, and December of 2013, as well as in January of 2014, reflect that Plaintiff received Toradol injections (60mg) in her hip for pain, evidently without any complications or adverse side effects, as none were noted (*see* tr. 308, 307, 306, 305).

Plaintiff returned to Dr. Crayton on January 7, 2014, with complaints of neck, back, and shoulder pain (tr. 303). It was also noted that she was there for "follow up" as to her fibromyalgia (*id.*). Plaintiff stated the Toradol injections "help[ed]" for about a week (*id.*). Dr. Crayton assessed lumbago, continued Plaintiff's medications (Tramadol, Cymbalta, and Butrans patches), and advised her to return in six months (tr. 303–04). Plaintiff returned on July 7, 2014 (tr. 300). She again reported pain in her neck, shoulders, and low back (*id.*). She also stated she had been walking daily with her dogs, though she reported feeling fatigued and requested a B-12 injection

(*id*).   Dr. Crayton also administered another Toradol injection, again without complications (tr. 301).

Plaintiff returned to Dr. Crayton in January of 2015.  Plaintiff's complaints were essentially the same as in July 2014 (*see* tr. 311).   A physical examination revealed positive trigger points, tenderness in the cervical and lumbar areas, and limited range of motion in the neck (tr. 312).   Toradol and B-12 injections were administered; Plaintiff was assessed with fibromyalgia, degenerative joint disease, and chronic fatigue; and Plaintiff was advised to return in three months (tr. 311–12), after obtaining follow-up lumbar and cervical MRIs.

Plaintiff obtained both lumbar spine and cervical spine MRIs on February 25, 2015 (tr. 316).  R. Darr McKeown, the radiologist, compared the lumbar MRI to the prior one of June 2011 and opined that the left posterolateral herniation at L5-S1  had resolved, though he noted "progression of the moderately severe facet degeneration, now allowing grade 1 spondylolisthesis" (*id*.).  Dr. McKeown also assessed mild disc narrowing at L4-5 and mild disc degeneration at a few other levels (*id*.).   Dr. McKeown then compared the cervical spine MRI with Plaintiff's earlier MRI of May 2011 (tr. 314).  Dr. McKeown noted no disc herniations or any cord compression (*id*.). He did observe some multilevel degenerative disc and facet joint disease, most prominent at C3 to C7, along with spurs, protrusions, and facet hypertrophy at those

same levels, but he commented that there had been "just minimal progression of the disease since the [prior MRI]" (*id*.).

B.     Relevant Hearing Testimony

Plaintiff's Testimony and Personal/Work History

At Plaintiff's hearing before the ALJ, held March 24, 2015, she testified she has an AA degree and prior payroll and bookkeeper-type work experience from 2007, 2005, and earlier in the 2000s, which she performed at the sedentary level of exertion (tr. 51–53). Plaintiff stated she was unable to work during the relevant period due to pain in her lower back, shoulders, neck, and spine, as well as severe headaches (tr. 53). She claimed to have debilitating pain that occurred at least three times a week (*see* tr. 55), and she stated that heating pads provided relief in that they made her "comfortable," so she literally used them all day long or at least eight hours a day (*see, e.g.*, tr. 62, 63, 64). She also claimed that from a seated position she could lift no more than five pounds due to upper extremity weakness (tr. 57), though she estimated she could have lifted slightly more during the relevant period (*id*.). Also with respect to the relevant period, Plaintiff stated she could stand for only one hour in an eight-hour workday; walk for twenty to thirty minutes; sit, in intervals of twenty to thirty minutes, no more than a total of two hours; and occasionally carry ten pounds (tr. 57–58). Plaintiff, who previously reported she was raising her twelve-year-old son

alone (*see* tr. 221), testified she was able to take her son to school and pick him up each day, as well as perform light housekeeping, such as laundry, making the beds, cooking "quick" meals, and loading the dishwasher, but she was unable to iron, sweep, vacuum, or mop (tr. 60, 229).

Plaintiff's sister provided a statement and completed a questionnaire, on which she corroborated many of Plaintiff's complaints of pain and other symptoms, as well as her reports of some limited daily activities (*see* tr. 223–26).

<u>Testimony of the Vocational Expert ("VE")</u>

John Black, a VE, testified at Plaintiff's hearing. In summary, he characterized Plaintiff's past work as both sedentary and skilled (tr. 69). He then testified that if Plaintiff's statements were determined to be fully credible, she would not have been able to perform any work during the relevant period (*id.*). Likewise, if Plaintiff experienced "a moderately severe degree of pain which interfere[d] with concentration, persistence and pace for greater than three hours at a time and occur[red] threes days a week," such that the workstation would have to be abandoned, she would be unemployable (tr. 72).

The VE then testified that a hypothetical person of Plaintiff's age, with Plaintiff's RFC, education, and work experience, could perform Plaintiff's past work, <u>unless</u> the person was precluded from performing repetitive computer work, as

Plaintiff is per the RFC (tr. 70–71). However, taking into account the computer restriction, the VE opined that person could perform other available work such as cashier and ticket taker (light, unskilled jobs) (tr. 71–72).

## V.    DISCUSSION

Plaintiff raises two issues in this appeal: (1) whether the ALJ erred in evaluating the credibility of her subjective complaints; and (2) whether the ALJ erred in determining her RFC, including by failing to properly consider the effects of Plaintiff's fibromyalgia on her work-related functional abilities (ECF No. 16 at 1, 5–10).

### A.    Credibility Findings

In Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991), the court articulated the "pain standard," which applies when a disability claimant attempts to establish a disability through her own testimony of pain or other subjective symptoms. The pain standard requires:  (1) evidence of an underlying medical condition and either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id*. at 1223 (internal citation omitted). If a claimant testifies as to her subjective complaints of disabling pain and other symptoms, as Plaintiff did here, the ALJ must clearly

"articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. Foote, 67 F.3d at 1561–62. Additionally, "'[a]lthough this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.'" *Id.* at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). The credibility determination does not need to cite "'particular phrases or formulations,'" but it cannot merely be a broad rejection which is "'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Id.* (quoting Jamison v. Bowen, 814 F.2d 585, 588–90 (11th Cir. 1987)).

Here, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause some of her symptoms (tr. 30). But the ALJ found that Plaintiff's statements as to the intensity, persistence, and limiting effect of her symptoms were not entirely credible "for the reasons explained in this decision" (tr. 30).

The ALJ then acknowledged the results of the cervical spine MRI, which Plaintiff obtained a month or so before the alleged onset date, as well as the lumbar spine MRI, which Plaintiff obtained four days after the alleged onset date (*see* tr. 30, 34). After describing the MRI findings and characterizing many of them as "mild," the ALJ found Plaintiff to have two severe impairments based largely on this evidence

Case No.: 5:17cv187/EMT

(*see* tr. 30). In concluding that these impairments did not result in the extreme limitations alleged by Plaintiff, however, the ALJ referenced Dr. Crayton's treatment notes, including those demonstrating that Plaintiff failed to obtain the recommended cervical epidural injections, that Plaintiff's conditions were managed with medications only, that the medications appeared to provide adequate pain relief, and that Plaintiff reported "doing well physically" and walking her dogs daily (*see* tr. 30–31, 34). The ALJ also noted Plaintiff's report to Dr. Maddox that her symptoms were "mild," that her medications "helped," and that, other than medications, Plaintiff had not sought or obtained treatment for her symptoms, such as physical therapy or epidural injections (tr. 31). The ALJ also noted that the lumbar and cervical MRIs obtained well after the relevant period showed, at least in part, resolution of one condition and minimal progression of the other (tr. 32). The ALJ also repeatedly referenced the lack of objective evidence to support Plaintiff's allegations (*see, e.g.*, tr. 33, 34). All of these reasons are supported by the record and would appear to provide substantial support for the ALJ's overall credibility findings. The court finds itself unable to uphold the overall decision, however, in light of the ALJ's additional findings regarding Plaintiff's RFC and fibromyalgia, as discussed next.

B.     Residual Functional Capacity Determination
        Fibromyalgia

1.    Residual Functional Capacity

The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments.  20 C.F.R. § 404.1545(a).  The ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case.  20 C.F.R. § 404.1520(e). An ALJ need not include in the RFC limitations, restrictions, or opinions he has properly rejected or that are otherwise unsupported by the record.  *See* <u>McSwain v. Bowen</u>, 814 F.2d 617, 620 n.1 (11th Cir. 1987).

Here, just after making the credibility findings discussed above, and finding that Plaintiff's testimony is unpersuasive because it is "inconsistent with the objective abnormalities established by the record," the ALJ stated: "In sum, the above residual functional capacity assessment is supported by      " (tr. 34).  No text appears after the word "by" (*see id*.).  The Commissioner urges this court to overlook the incomplete sentence and rely on the ALJ's prior discussion to discern the basis for his RFC determination, namely, the ALJ's description of the MRIs, his summary of the treatment records of Dr. Crayton and Dr. Maddox, and his discounting of Plaintiff's testimony.  But such is a difficult leap, especially in a case like this one where no physician—treating, examining, or even a non-examining agency physician—offered any opinion as to Plaintiff's physical capacities, making the actual basis for the RFC

determination unclear.[4]  Stated succinctly, the ALJ's RFC determination does not

reflect an accurate and logical bridge between the evidence and the result.  *See* <u>Green</u>

<u>v. Shalala</u>, 51 F.3d 96, 101 (7th Cir. 1995) (to permit an informed review, ALJ must

articulate his analysis of the evidence; "[o]nly then may a reviewing court track the

ALJ's reasoning and be assured that the ALJ considered the important evidence");

<u>Herron v. Shalala</u>, 19 F.3d 329, 333 (7th Cir. 1994); <u>Zblewski v. Schweiker</u>, 732 F.2d

75, 78–79 (7th Cir. 1984); *see also* SSR 82-62 ("The rationale for a disability decision

must be written so that a clear picture of the case can be obtained.  The rationale must

follow an orderly pattern and show clearly how specific evidence leads to a

conclusion.").

In light of the ALJ's finding that Plaintiff's fibromyalgia is a severe

impairment, the error as to the RFC is compounded by the ALJ's repeated references

to the lack of objective evidence to support Plaintiff's allegations.  The Eleventh

Circuit has noted that fibromyalgia "'often lacks medical or laboratory signs, and is

---

[4] Additionally, the ALJ made a somewhat confusing statement regarding the opinion of Efren Baltazar, M.D., a non-examining agency physician who reviewed Plaintiff's file in connection with her request for reconsideration and who determined, on July 18, 2013, that the medical evidence of record was insufficient to assess Plaintiff's claim (*see* tr. 85–92).  Dr. Baltazar therefore concluded that Plaintiff was "not disabled" based solely on the lack of evidence, <u>without</u> assessing her RFC or otherwise offering any opinion as to her physical or mental abilities to perform work (*id.*).  The ALJ assigned "little evidentiary weight" to Dr. Baltazar's opinion, because the ALJ found that Plaintiff was more limited than Dr. Baltazar opined and because the opinions of treating and examining physicians are entitled to more weight than those of non-examining physicians such as Dr. Baltazar (tr. 32).

generally diagnosed mostly on a[n] individual's described symptoms,' and that the 'hallmark' of fibromyalgia is therefore 'a lack of objective evidence.'" Hernandez v. Comm'r of Soc. Sec., 523 F. App'x 655, 657 (11th Cir. 2013) (quoting Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)). Although many of the reasons cited by the ALJ for finding Plaintiff less than fully credible are well-founded, it is unclear to what extent the ALJ relied upon his oft-repeated concern about the lack of objective evidence in weighing her credibility and in determining her RFC.[5] The lack of objective support cannot provide substantial evidence to wholly discredit Plaintiff's testimony as to her fibromyalgia symptoms or to exclude from the RFC any restrictions related to her fibromyalgia. While the ALJ in fact considered other factors in making his credibility and RFC findings, the *extent* to which he did so is far from clear, as is, conversely, the extent to which he relied upon the lack of objective medical evidence as it relates to Plaintiff's fibromyalgia and related symptoms.

It may be that the RFC in fact accurately reflects Plaintiff's functional abilities during the relevant period, but this court cannot uphold a decision by an

---

[5] The ALJ statements regarding the lack of objective evidence include these: (1) "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations" (tr. 30); (2) "the record, in its entirety, does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged by the claimant" (tr. 33); (3) "I find that the claimant's testimony is inconsistent with the objective abnormalities established by the record" (tr. 34); and (4) "there are no diagnostic studies to show abnormalities which could reasonably be expected to produce symptoms anywhere near the level of severity alleged by the claimant" (*id.*).

administrative agency, even if there is enough evidence in the record to support the decision, if the reasons given by the trier of fact do not set forth an accurate and logical connection between the evidence of record and the findings of the ALJ. *See, e.g.*, Zblewski, 732 F.2d at 78–79 (while strong grounds may have existed for rejecting claimant's testimony, the ALJ's failure to articulate reasons for doing so precludes meaningful appellate review). This case is therefore due to be remanded for further administrative proceedings. Given the importance of credibility findings in fibromyalgia cases, the ALJ should reassess Plaintiff's credibility and RFC, giving due consideration to the need to go beyond objective medical evidence in properly evaluating such cases.

VI.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is not supported by substantial evidence and should not be affirmed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. This action will therefore be remanded for additional administrative proceedings, to include a redetermination of Plaintiff's credibility and RFC.

Accordingly, it is hereby **ORDERED**:

1.     That the Commissioner is directed to remand this case to the Administrative Law Judge for further proceedings consistent with this Order.

2.     That **JUDGMENT** is entered, pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's decision and **REMANDING** this case for further administrative proceedings.

3.     That the Clerk is directed to close the file.

At Pensacola, Florida this 27<u>th</u> day of September 2018.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

Case No.: 5:17cv187/EMT